UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

NORWOOD PROMOTIONAL PRODUCTS,  )
LLC,  )
            Plaintiff,  )
  )      1:09-cv-1378-JMS-WGH
     vs.  )
  )
KUSTOMKOOZIES, LLC and ROBERT  )
LIDDLE,  )
          Defendants.

**ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Trademark litigation can be steeped in technical issues and analysis, but is often born of

more pedestrian disputes. Such is the case with this lawsuit. What do you call those spongy

things that people wrap around a beverage can or bottle to keep it cool? Some people call them

"koozies." The parties to this lawsuit both do, and as a result they are no strangers to each other

or litigation. The parties each previously sought trademarks involving the word "koozie," and

their competing claims were at the heart of previous litigation between Plaintiff's predecessor

("Old Norwood") and the Defendants. That lawsuit was settled in 2006, and as a result the

parties entered into both a settlement agreement and a licensing agreement. Plaintiff Norwood

Promotional Products, LLC ("Norwood") has initiated this iteration of the dispute, filing a

five-count Second Amended Complaint, asserting that Defendants KustomKoozies, LLC and

Robert Liddle (collectively "Kustom")[1] breached the earlier settlement and license agreements.

---

[1]KustomKoozies, LLC and Robert Liddle are represented by the same attorney, made their
filings jointly in this lawsuit and have made no effort to distinguish themselves in a legal sense
in mounting a defense to the lawsuit. Liddle owns KustomKoozies, LLC, and his actions bind
it, so there may never be a reason to require a distinction, but the Court does not make that

infringed Norwood's trademark, and engaged in unfair competition. Norwood also seeks a declaratory judgment to the effect that it has not breached the license agreement with Kustom and that Kustom may not challenge the validity of the Norwood's trademark. By way of counterclaim, Kustom seeks to invalidate Norwood's mark and claims Norwood has breached the license agreement. Both seek partial summary judgment on a variety of claims, or portions thereof, and defenses.

## I.     *Factual Background*

Norwood is a large promotional products company which sells imprinted promotional products through various distributors. Kustom is an internet retailer, owned and operated by Robert Liddle and his wife. Kustom sells insulated beverage can and bottle holders with customizable promotional imprinting, directly to end-customers in quantities as small as a dozen. Included in the array of advertising products sold by Norwood, through its stable of independent distributers, are insulated holders for beverage cans, which, like those sold by Kustom, are suitable for the imprint of promotional information or advertising.

As previously mentioned, Kustom and Old Norwood were adverse parties in two lawsuits filed in 2005 over the use of the term "koozie." At the time of those two lawsuits, Old Norwood had an application pending before the United States Patent and Trademark Office ("USPTO") for registration of "KOOZIE" as its mark, and Kustom had an application before the USPTO for registration of "KUSTOM KOOZIES" as its mark. The parties reached a settlement of those lawsuits and, as a part of that settlement, Kustom agreed to abandon its pursuit of the registration of KUSTOM KOOZIE as its mark and accept a royalty-free license from Old Norwood for the

---

determination at this point and simply chooses to refer to the defendants collectively, for purposes of this entry, as the parties have in their briefing.

conditional and limited right to use Old Norwood's claimed mark to sell foam and collapsible insulated beverage containers (purchased from Norwood's manufacturing supplier) under the "KOOZIE" name and from a particular website. The license and settlement agreement did not require that Kustom sell only the "KOOZIE" brand, but did require that the use of the mark be consistent with certain brand standards, including a prohibition against the use of the mark in a generic fashion. Kustom also received a payment of $40,000 as part of the litigation settlement. The agreement further prohibited Kustom from challenging Norwood's "KOOZIE" mark or assisting anyone else in doing so.

Key provisions of the settlement and license agreements along with the corresponding paragraph number are summarized and/or quoted below:

**Confidential Settlement Agreement**

1. Old Norwood pays $40,000 to Kustom.
2. Both parties dismiss their lawsuits.
3. Both parties agree to mutual general releases.
4. Old Norwood agrees not to sue Kustom for its use of the terms "KOOZIE" or the business name "Kustom Koozies" or the internet website www.kustomkoozies.com, "Except to the extent that such use constitutes a breach of this Agreement or the License Agreement executed contemporaneously herewith."
5. Kustom must abandon its effort to register KUSTOM KOOZIES with USPTO and agrees "not seek to obtain ownership of any mark, trade name or internet domain (except to the extent permitted by the license granted herein) anywhere throughout the world that incorporates the term 'koozie' or any similar mark." Kustom agrees not to oppose or assist anyone else in opposing Old Norwood's application to register "KOOZIE" as its mark.
6. Old Norwood agrees to grant a conditional license to Kustom and incorporates the same as an exhibit.
9. "Each party shall cooperate and use its best efforts to take all actions necessary to effectuate all of the terms and conditions of this Agreement."
10. The agreement applies to successors.
...
13. No waiver of any right or condition under the agreement will operate as a continuing waiver of that right or condition or of any other rights or conditions.

**License Agreement**

1. Old Norwood asserts an exclusive right to the Licensed Mark "KOOZIE" and Kustom has disputed that assertion, but the parties agree to a license arrangement as a part of a settlement of that dispute. Kustom seeks and Old Norwood wishes to grant the use of the Licensed Mark "on certain goods to be marketed and sold only as provided in this Agreement."

2. A royalty-free, non-exclusive, nontransferable limited license is granted by Old Norwood to Kustom to:

   a. "use the Licensed Mark in connection with the advertisement, promotion, marketing, and retail sale, on the Internet at a website identified by the domain name KUSTOM KOOZIES.COM, and through associated mail-orders and facsimile orders, of foam and collapsible insulated beverage containers purchased from [Old Norwood] (the "Licensed Goods") to [Kustom's] customers ..., and in connection with the advertisement, promotion, and marketing, whether on the Internet or elsewhere, of that domain name, provided, however, that sales to [Kustom's] customers may not be for more than 3000 Licensed Goods ... ."

   b. "use the name "KustomKoozies, LLC," "KustomKoozies," and "Kustom Koozies," to refer to the corporate entity ...."

   c. "operate the website identified by the domain name KUSTOMKOOZIES.COM and the web address www.kustomkoozies.com to advertise, promote, market and sell the Licensed Goods ...."

   d. use the names "KustomKoozies,""Kustom Koozies" and "www.kustomkoozies.com" as service marks.

   "For clarity, and not by way of limitation, [Kustom] shall <u>not</u>:

   a. use any name other than the Licensed Mark as a trademark identifying the source of the Licensed Goods, or

   b. use, or authorize any other party to use, the Licensed Mark or any mark similar to the Licensed Mark, except to the extent permitted by the license granted in this Agreement."

3. Old Norwood agrees to sell Kustom the Licensed Goods at cost.

4. Kustom agrees not to do anything inconsistent with Old Norwood's ownership of the mark and the license shall not "give [Kustom] any right, title or interest in or to the Licensed Mark, other than the right to use the Licensed Mark in accordance with this Agreement."

5. "[Kustom's] use of the Licensed Mark on the Licensed Goods and in advertising, promotional and marketing materials must comply with [Old Norwood's] brand standards, ...

   [Old Norwood's] minimum brand standards are as follows:

   The Licensed Mark must be:

   a. used in all capital letters;

-4-

b. used at least once on every page of any advertising, promotional, or marketing materials, including websites, with the trademark symbol (™) (or any other notice symbol specified by [Old Norwood]) in superscript to the right of the "E" in the Licensed Mark;

c. used as an adjective (e.g., KOOZIE™ Can Kooler) and not in a generic fashion; . . ."

...

7. Old Norwood can terminate the license agreement if it notifies Kustom of a breach and Kustom fails to remedy it within thirty days. Further, "[i]n the event of a final determination by the USPTO , or a court, tribunal, or agency of competent jurisdiction that [Old Norwood] does not have any trademark rights, including common law rights, in the Licensed Mark, or that the Licensed Mark is a generic term, this Agreement shall be null and void."

...

10. ".... The failure or delay by [Old Norwood] or [Kustom] to exercise any rights or remedies under this Agreement shall not operate as a waiver of such rights or remedies.

.... [Kustom] is granted no right or authority . . . to use the Licensed Mark other than as expressly authorized."

"In addition to any provisions that by their nature should survive, the obligations set forth in Sections 4, 8, 9, 11, and 12 shall survive termination."

.... Specific addresses and telephone numbers of the parties are set forth and the agreement requires all communications "required or permitted" under the agreement to be in writing and sent to those addresses with copies sent to their identified attorney as well.

On May 15, 2007, the USPTO issued a trademark registration to Old Norwood for the mark "KOOZIE®." On May 6, 2008, an attorney representing Old Norwood sent a letter to Kustom indicating that it had come to Old Norwood's attention that Kustom was in violation of Paragraph 5 of the licensing agreement, citing, as an example, Kustom's failure to set out KOOZIE in all capital letters and its failure to set forth the appropriate subscript (now "®" instead of "™" as a result of the acceptance of the trademark registration) following the term. The letter demanded that Kustom cure all noncompliance and notify Old Norwood of any action taken to cure within thirty days. This letter

was the first notice that Kustom received notifying it that the KOOZIE mark had been registered by the USPTO.

In response to the May 6, 2008, letter, Robert Liddle reviewed the agreement and Kustom's website pages, making changes that he believed cured any noncompliance issues, though Old Norwood's attorneys never gave him specific examples of where his website was out of compliance. Emails were exchanged with the last being Liddle's July 30, 2008, email responding to a request from Old Norwood's attorneys that he explain what he had done to bring the website into compliance. Liddle received no response to that email, and Old Norwood continued to sell blank beverage insulators to Blue Line Design, the company that Kustom had designated in the license agreement as its printing supplier for purposes of the custom "KOOZIE®" orders it received from customers.

Old Norwood went through Chapter 11 bankruptcy proceedings and by the middle of 2009 the bulk of its assets, including the registered mark and the Settlement Agreement and License Agreement with Kustom, were purchased by the Plaintiff, Norwood. Norwood stands as the successor and assignee of Old Norwood and, as such, inherited the right to enforce the Settlement Agreement and License Agreement.[2] On November 3, 2009, Norwood filed this lawsuit against Kustom. By letter of that same date, counsel for Norwood informed Kustom that Norwood had purchased the Old Norwood assets and was cancelling the License Agreement because Kustom was in breach of the standards set forth in Section 6 of the agreement. In his letter, he

---

[2] The Court notes that Defendants contest the validity of the assignment of the "Koozie" mark from Old Norwood to Plaintiff. The foregoing finding in no way determines the

attempted to rely on the May 6, 2008, letter from Old Norwood's counsel as the requisite 30-day notice under the agreement.

The advocacy in this matter has been zealous if not always effective or efficient. And, after several aborted or mistimed efforts at pursuing partial summary judgment by serial filings, Norwood has taken its final pretrial shot at having the Court decide five issues as a matter of law. [Dkt. 147.] In response, Kustom has filed its own motion for summary judgment asserting six issues for resolution. [Dkt. 162.] Both parties take literally and liberally Rule 56's amendments which permit submission of "part of each claim or defense" for resolution by way of summary judgment.

## II.    *Issues Raised in the Summary Judgment Motions*

Norwood's motion seeks summary judgment on five issues[3] as follows:

(1) that Kustom breached the settlement and license agreements;[4]
(2) that Kustom infringed Norwood's trademark, by continuing to use it after its license had been terminated;
(3) on Kustom's affirmative defenses that Norwood's trademark is generic and is not distinctive;
(4) on Kustom's Counterclaim to cancel the mark and declare it invalid; and
(5) on eleven other of Kustom's affirmative defenses.

[Dkt. 147 at 2.]

Kustom's motion pursues summary judgment in its favor with respect to the

---

validity of that defense.

[3] While Norwood asks eleven questions, stated as issues, in its memorandum, [dkt. 149 at 6], the Court will focus on those issues raised in the motion itself.

[4] Norwood is not seeking summary judgment on its breach of contract claims, but simply a finding that the first two elements of the claim, existence of a valid contract and breach, have been established as a matter of law.

following issues[5]:

> (1) That Norwood breached the settlement and license agreements and damaged Kustom by:
>> (a) failing to request in writing on a reasonable basis that Kustom cease or modify its use of the "Licensed Mark";
>> (b) failing to give Kustom notice of alleged breaches and an opportunity to cure before terminating the agreements;
>> (c) failing to cooperate with Kustom and use its best efforts to take all actions necessary to effectuate all of the terms and conditions of the agreements; and
>> (d) filing this lawsuit in violation of the covenant not to bring any legal action against Kustom involving its use of the term "KOOZIE" except to the extent that Kustom's use constitutes a breach of the agreements.
>
> (2) That cancellation of the registration of Norwood's claimed KOOZIE trademark is required because the USPTO issued the registration in error after maintaining and continuing its refusal under Section 2(e)(1) of the Trademark Act, 15 U.S.C. §1052(2)(e)(1) to register the claimed mark because it was merely descriptive, and Norwood failed to overcome that refusal.

Kustom's summary judgment motion does not specifically ask for judgment on Count IV of the Second Amended Complaint, which asserts an unfair competition claim, but Kustom raised the issue in its briefs and Norwood addressed the issue in response. Accordingly, the Court will include the issue in its analysis as well.

### III.    *Summary Judgment Standard*

Courts are frequently confronted with cross-motions for summary judgment because Rules 56(a) and (b) of the Federal Rules of Civil Procedure allow both plaintiffs and defendants to move for such relief. Cross-motions for summary judgment do not automatically mean that all questions of material fact have been resolved. *Franklin v. City of Evanston*, 384 F.3d 838, 842 (7th Cir. 2004). "In such situations, courts must consider each party's motion individually to determine if that party has satisfied the

---

[5] Like Norwood, Kustom enumerates ten questions, stated as issues, in its supporting memorandum. [Dkt. 163 at 12.] Again the Court will focus on the issues raised in the motion for summary judgment itself.

summary judgment standard." *Kohl v. Ass'n. of Trial Lawyers of Am.*, 183 F.R.D. 475 (D. Md. 1998). Thus, in determining whether genuine and material factual disputes exist in this case, the Court considers the parties' respective memoranda and the exhibits attached thereto, and construes all facts and drawn all reasonable inferences therefrom in the light most favorable to the respective non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

*IV.    Analysis*

The Court finds that while the parties' motions have presented fairly straightforward issues, the briefs have defined the issues with a preference for litigation tactics and strategy, as opposed to clarity. The Court's review of the issues would have been facilitated by an organizational briefing scheme that identified the issues with the counts of the complaint, counterclaim, or the affirmative defenses to which they corresponded. Even though the parties did not, the Court will organize its discussion by the applicable count in the operative complaint or counterclaim, and by affirmative defenses, though not necessarily in the order pled.

    **A.    Cancellation of Registration and Declaration of Invalidity
        of Norwood's Mark (Count II - Kustom's Counterclaim)**

As its second counterclaim, Kustom contends that Norwood's registered mark, "KOOZIE®," should be cancelled. In addition, much of Kustom's defense to the entirety of Norwood's Second Amended Complaint is rooted in its challenge to the legitimacy of the mark. Because the Court concludes that Kustom voluntarily, and for consideration, gave up its right to challenge the mark, a discussion of that issue at the start will facilitate a more efficient analysis of the other issues raised in the cross-motions

-9-

for summary judgment.

Kustom contends "KOOZIE" was registered as a trademark in error by the USPTO and that because it lacks distinction and is a generic reference to insulated beverage holders, the mark's validity should be revisited. However, Kustom gave up its right to challenge the validity or legitimacy of the mark when it accepted $40,000 and a conditional license to use the mark in order to settle the litigation both parties pursued back in 2006. Accordingly, Kustom is estopped from challenging the rights Norwood claims in "KOOZIE" for at least two reasons.

First, in Paragraph 5 of the settlement agreement it entered into with Norwood, Kustom agrees that it "shall not attempt to cancel or assist any third party in seeking to cancel" the registration of the mark. It goes on to promise not to challenge Norwood's "ownership of or rights in or to the KOOZIE mark." The license agreement is incorporated into the settlement agreement and, in Section 4 of the license agreement, Kustom agreed to "do nothing inconsistent with" Norwood's ownership of the mark.

Interpreting the terms of a contract is a pure question of law, and under Indiana law, it is this Court's obligation to interpret the contract as a whole in a manner that harmonizes its provisions and gives life to the intent of the parties. *Schoemer v. Hanes & Associates, Inc.*, 693 N.E.2d 1333, 1338-39 (Ind. Ct. App. 1998). With regard to the settlement and license agreements at issue here, it is not at all difficult to assess the parties' intent: Norwood was allowed to pursue the registration of the mark and Kustom received some cash and a limited license to use the mark in exchange for its agreement to bow out of the trademark registration race and never again challenge Kustom's mark,

should it be registered.

Kustom argues that Norwood cancelled the license without appropriate notice and therefore that contractual breach prevents it from asserting the "no challenge" provisions of these agreements. However, even if Kustom did cancel the license agreement without appropriate notice (an issue addressed later in this entry), that failure may allow the rights Kustom acquired in the license agreement to survive, but it does not alter Kustom's obligations under the settlement agreement. Once Norwood obtained a registration of the mark, Kustom could not take any steps inconsistent with Norwood's ownership of the mark or its validity. Furthermore, Section 10 of the license agreement states that the provisions of Section 4, which contains the bar on taking action inconsistent with Norwood's ownership of the mark, survive cancellation or expiration of the agreement.

Perhaps Norwood's best argument for barring any challenge by Kustom to the validity of Norwood's mark lies in the doctrine of "licensee estoppel." The doctrine of licensee estoppel is an equitable doctrine which holds that a trademark licensee is barred from challenging the validity of the licensor's mark. *See* 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 18.63 (4th ed. 2011).

Kustom argues that even when considering licensee estoppel there must be a balancing of the public policy interest in favor of challenging invalid trademarks against the private interest in allowing parties to contract as they see fit. At least one federal court of appeals decision has so held. *See Idaho Potato Commission v. M & M Produce Farm & Sales*, 335 F.3d 130, 137 (2nd Cir. 2003) (adapting the patent licensee estoppel test articulated in *Lear, Inc. v. Adkins*, 395 U.S. 653 (1969), for use in the trademark

context).   However, other circuit courts have invoked the doctrine and held that a trademark licensee may not break its promise not to challenge the licensor's trademark rights, *see John C. Flood of Virginia, Inc. v. John C. Flood, Inc.,* 642 F.3d 1105, 1110-11 (D.C. Cir. 2011); *Seven–Up Bottling Co. v. Seven–Up Co.*, 561 F.2d 1275, 1279–80 (8th Cir. 1977); *Pacific Supply Co-op. v. Farmers Union Central Exch*ange, *Inc*., 318 F.2d 894, 908–09 (9th Cir. 1963).   While the Seventh Circuit has not examined the doctrine in detail, at least three district courts in this circuit have opined that the doctrine bars a former licensee from challenging its former licensor's trademark based on facts or circumstances which existed during the time of the license.  *Alpha Tau Omega Frater-nity, Inc. v. Pure Country, Inc.*, 2004 WL 3391781 *4 (S.D. Ind. 2004); *Bunn-O-Matic Corp. v. Bunn Coffee Service, Inc.,* 88 F. Supp. 2d 914, 927 (C.D. Ill. 2000); *Chrysler Motors Corp. v. Alloy Automotive Co., Inc*., 661 F. Supp. 191, 193 (N.D. Ill. 1987).

Even if this Court chooses to balance the public policy concerns or weigh the equities of the specific circumstance rather than strictly apply licensee estoppel, Kustom comes out a loser.   There can be no question that time-honored public policy, as well as principles of judicial efficacy favor and promote agreed resolutions between parties to litigation.   *See e.g., Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1235 (7th Cir. 1983). In this instance, Kustom chose to accept both cash and a conditional royalty-free license in order to resolve its earlier litigation with Norwood.   It could have chosen to continue the litigation, to negotiate an agreement which would have left it as the licensor and Norwood the licensee, or to reserve its right to challenge the mark, but it did not.   The equities are not in Kustom's favor, and it should not be allowed to avoid the promises it

made when it entered into the settlement and license agreements and accepted Norwood's money.

While public policy may favor a robust environment where trademark claims are open to challenge, there is no dearth of parties willing to take Norwood on. In fact, as Kustom has pointed out, others are sitting in wait to do just that. There are four challenges to the trademark's validity currently pending, before the Trademark Trial and Appeals Board that are on hold because of this lawsuit. Indeed, those challenges should go forward; the merits of the mark should be examined and those claims resolved without regard to the instant cause. The licensee estoppel rule forecloses only the licensee – here Kustom – from making the challenge, not others. *Fair Isaac Corp. v. Experian Information Solutions, Inc.* 650 F.3d 1139, 1150 (8th Cir. 2011).

This ruling should not be read as a rejection of the merits arguments made by Kustom or any other party about the distinctiveness or generic nature of the term "koozie." The Court is simply holding that such arguments cannot be advanced by a person or entity that accepted a large payment of money and a conditional license to use the mark in exchange for dropping those and similar challenges raised in previous litigation. Norwood is entitled to summary judgment in its favor with respect to Count II of Kustom's Counterclaim as Kustom is estopped from challenging the validity of Norwood's mark.

**B.** **Breach of Contract by Kustom: Settlement & License Agreements (Counts I & II of Norwood's Second Amended Complaint)**

Contract interpretation is a question of law for the court and often a question suited for determination on summary judgment.[6]  *J.S. Sweet Co., v. Sika Chemical Corp.,* 400 F.3d 1028, 1035-36 (7th Cir. 2005).   The overriding purpose of contract law is to ascertain the intent of the parties.  *Id.* at 1035.   If the language of the contract is unambiguous, that goal can be reached at the summary judgment stage as a matter of law. *Id.*   The Court notes that because the settlement agreement incorporates the license agreement, a breach of the latter is a breach of the former.   Further, consistent with the language of Section 10 of the licensing agreement[7], the settlement agreement and the licensing agreement constitute the complete agreement between Norwood and Kustom, so the Court must look to the provisions of both agreements in reaching its goal of ascertaining the intent of the parties.

It is clear from a review of the deposition testimony of Robert Liddle and Kustom's response to interrogatories that, after entering into the settlement and licensing agreements, Kustom registered at least eight internet domain names that included the

---

[6] The parties appear to be in agreement that the law of Indiana applies to the breach of contract claim, as neither party has raised a choice of law issue and both have briefed the issue referring to Indiana law.   Accordingly, the Court will apply Indiana law.  *See ECHO, Inc. v. Whitson Co., Inc.*, 52 F.3d 702, 707 (7th Cir. 1995).

[7] The relevant language of Section 10 of the license agreement states:

> This Agreement and the confidential Settlement Agreement, to which this Agreement is an Exhibit, and all other exhibits and attachments to the Confidential Settlement Agreement, collectively, constitute the entire agreement between the parties ....   Should any term of this Agreement be found invalid or unenforceable, it shall not affect the validity or enforcea-

term "koozie." This registration is in direct contravention of Paragraph 5 of the settlement agreement. In addition to the web domains that included "koozie" in their name, it is uncontroverted that Kustom operated numerous other websites and that these websites were devoted to selling insulated beverage holders. The evidence also shows that Kustom used the term "koozie" to describe products being offered for sale on most if not all of those websites. Such use was clearly outside the conditional license and in violation of Section 2 of the license agreement wherein it states that:

> For clarity, and not by way of limitation, LICENSEE shall <u>not</u>:
> ...
> b. use or authorize any other party to use, the Licensed Mark or any mark similar to the Licensed Mark, except to the extent permitted by the license granted in this Agreement.

In an attempt to excuse these apparent breaches, Kustom makes several arguments. First, it argues that the nature of the mark is confusing and therefore ambiguous. The license agreement defines the "Licensed Mark" as the term "KOOZIE," yet at times the settlement agreement references Kustom's use of the term in lower case form "koozie" and also requires the ™ symbol to follow the term. According to Kustom, this makes the agreement ambiguous and subject to interpretation requiring outside evidence to understand the intent of the parties.

The Court disagrees. Kustom is grasping at straws to suggest that using the term "koozie" in lower case form is somehow acceptable. It offers no authority suggesting that capitalization, or the lack thereof, can be the key to determining whether a registered mark of this kind has been infringed, and the Court finds the intent of the parties' agreement clear. In prohibiting unauthorized use of the mark, both agreements refer to

---

bility of any other term of this Agreement.

"similar marks" as being barred from use as well as the mark itself.[8]   This clause prevents Kustom from simply altering the capitalization in order to make an "end run" around the limitations of the license.   The evidence also establishes that Kustom used "koozie" in both its capitalized and lower case forms on its various websites without an attempt to distinguish either particular use as being a trademark and the other not.   Such use undermines Kustom's contention that there would be a breach only if it used the term "KOOZIE" (in all capital letters) in a manner inconsistent with the license agreement.

Kustom also argues that Norwood itself breached the settlement and license agreements in several ways and that those breaches serve as a defense to Norwood's claims as well as a basis for Kustom to recover on its counterclaim.   The Court will determine the counterclaim issue in a later section of this entry, but a discussion of the alleged breaches by Norwood is warranted here for purposes of deciding if it is entitled to summary judgment on the issue of Kustom's breach of the agreements.

According to Kustom, Norwood breached the license agreement because it did not   "immediately" terminate the license agreement upon Kustom's failure to remedy the breach identified in the May 2008 letter to Liddle.   Kustom also maintains Norwood cannot sue on the basis of breaches it has not previously identified to Kustom in writing. These arguments are without merit.

First, the license agreement gives Norwood the "right" to immediately terminate

---

[8] Even if Kustom's complaint as to the confusing nature of the mark were well founded, there can be no question that the settlement agreement prohibited it from registering or owning a website domain name which included "'koozie' or any similar mark"   and it violated that prohibition several times over.

upon failure to cure, not the obligation to terminate. Second, whether the license agreement was properly terminated has nothing to do with Norwood's right to independently sue for a breach of the settlement agreement, such as Kustom's registration and ownership of several additional internet domain names which contain the term "koozie." Moreover, "[a] contractual obligation to provide notice and an opportunity to cure a default prior to terminating a contract does not necessarily affect the aggrieved party's right to sue for breach" of that contract. *Wisconsin Alumni Research Foundation v. Xenon Pharmaceuticals, Inc.*, 591 F.3d 876, 888 (7th Cir. 2010). Kustom's argument that Norwood breached by failing to immediately terminate the agreement therefore fails.

Next, Kustom contends that the "Further Acts" provision in the settlement agreement required that the parties cooperate and use their best efforts to effectuate the terms and conditions of both agreements and that Norwood's quick trigger with respect to terminating the license and filing this lawsuit breached that "best efforts" obligation. Because Norwood made no effort to discuss with Kustom any of its concerns regarding what it believed were ongoing violations of the license, following Norwood's acquisition of Old Norwood's assets, Kustom argues Norwood breached the "Further Acts" clause, which bars its recovery on claims of contract breach.

Again, Kustom is grasping at straws. A "Further Acts" clause which calls for the parties to cooperate in effectuating the settlement agreement, such as the one at Paragraph 9, is fairly typical of agreements resolving litigation. Such a provision seeks to assure that the parties cooperate in dismissing their claims and executing or filing the necessary documents to accomplish the same. Kustom tries to morph this paragraph into

-17-

an obligation to cooperate in regard to sorting out alleged violations of the licensing agreement and a requirement not to file suit without attempting to work out problems. The settlement agreement may incorporate the license agreement, but the license agreement does not specifically incorporate the terms of the settlement agreement. The license agreement has its own requirements with regard to notice of a breach, which is the subject of the next section of this entry.

The bottom line is that the "Further Acts" clause is written in a manner which infers no application outside of the settlement agreement. "Agreement" is a defined term within the settlement agreement, meaning "the Confidential Settlement Agreement." Its use in the "Further Acts" clause is clearly as a defined term, as evidenced by its capitalization. Accordingly, the requirements of cooperation and best efforts set forth in that clause clearly apply only to the settlement agreement.

Even then, the undisputed evidence demonstrates that Kustom was the first party to take any action inconsistent with the agreements reached at the time the previous litigation was settled. Under Indiana law, "[a] party first guilty of a material breach of contract may not ... seek to enforce the contract against the other party should that party subsequently breach the contract." *Licocci v. Cardinal Assocs., Inc.*, 492 N.E.2d 48, 52 (Ind. Ct. App. 1986). Kustom registered and operated websites with domain names that included the term "koozie," in direct violation of the terms of the settlement, which demonstrates a lack of cooperation. Regardless of whether Kustom is claiming that Norwood failed to fully cooperate, failed to use its best efforts, acted in bad faith or breached the license agreement at some point by failing to give proper notice of a

perceived breach or by refusing to work with Kustom to cure breaches, it is Kustom who committed the first breach, and it cannot now insist that Norwood be held to one of the contract's clauses. *See Coates v. Heat Wagons, Inc.,* 942 N.E.2d 905, 917 (Ind. Ct. App. 2011) ("When one party to a contract commits the first material breach of that contract, it cannot seek to enforce the provisions of the contract against the other party if that other party breaches the contract at a later date."). While Kustom's breach does not excuse Norwood from its contractual obligations, it does bar Kustom from citing a subsequent breach by Norwood as a defense to Norwood's claims. *See id.* at 919 (enforcing a contract against the party determined to have committed the first material breach).

Kustom also makes much of Norwood's failure to provide evidence of damage, claiming that without such evidence summary judgment on Norwood's breach of contract claim is precluded. However, Norwood is not seeking a summary judgment on the issue of damages or the full breach of contract claim. To prove breach of contract, a plaintiff must show the existence of a contract, the defendants' breach thereof, and damages. *Berkel & Co. Contractors v. Palm & Associates, Inc.,* 814 N.E.2d 649, 655 (Ind. Ct. App. 2004). Norwood is asking the Court to grant partial summary judgment as to only the first two elements. If no material question of fact remains, the Court can clearly rule on the first two elements of the breach of contract claim but allow a jury to determine the damages element at trial. *See Alston v. King,* 157 F.3d 1113, 1116 (7th Cir. 1998); *The Winterton, LLC v. Winterton Investors, LLC*, 900 N.E.2d 754, 757-58 (Ind. Ct. App. 2009); *see also*, Fed. R. Civ. Proc. 56(a) (allowing summary judgment of "part of each claim or defense").

That is not to say that resolution of Norwood's breach of contract claims is settled in this case. Norwood specifically did not seek summary judgment on the entirety of its breach of contract claims. And just as important, Kustom did not seek summary judgment on the absence of damages element. It simply raised the damages issue in response to Norwood's request for partial summary judgment on the issue of breach. It cites a stipulation the parties have entered in which Norwood renounces any claim for lost profits and corrective action damages. [Dkt. 100.] But the stipulation cited by Kustom is insufficient to establish that Norwood sustained no damage whatsoever. At trial, the jury will decide if Norwood was damaged. If the jury finds Norwood sustained no damage, its breach of contract claims will fail. If the jury finds Norwood has been damaged, it will be instructed on the manner in which any damages may be calculated. For now, Norwood is entitled to partial summary judgment on the issue of whether Kustom breached the Settlement and License Agreements. Partial summary judgment in Norwood's favor is limited to the first two elements of Norwood's breach of contract claims and only with respect to the breaches specifically addressed above.

Norwood claims Kustom breached the license agreement in other ways as well. It asserts that Kustom took orders that were larger than allowed by the license agreement, sold products under the licensed mark without buying the insulated blanks from Norwood's manufacturing supplier and failed to comply with other brand standards as well. The Court has examined the evidence submitted in support of those contentions and concludes that the record is insufficient to establish such breaches as a matter of law. In particular, the deposition testimony of Liddle and the representative of Blue Line,

which was the printing company that purchased the product blanks in accordance with the license and printed the insulated beverage holders sold by Kustom, is subject to different interpretations and cannot be relied upon as eliminating all questions of fact on those issues.

Norwood's final claim of contract breach is founded upon Kustom's continued use of the mark following Norwood's decision to terminate the license agreement. And, that issue relates to the question of whether Norwood took the appropriate steps to provide notice of a license breach, a contractual prerequisite to involuntary termination of the license agreement. Answering that question also allows the Court to determine whether Norwood is entitled to the summary judgment it seeks with regard to Kustom's continued use of the mark constituting trademark infringement.

### C. Trademark Infringement by Kustom (Count III of Norwood's Second Amended Complaint)

While Norwood asserts a number of different factual bases for claiming Kustom has infringed its trademark, it seeks summary judgment only on its claim that the continued use of the mark following Norwood's termination of the license constituted infringement as a matter of law. Norwood's argument is premised upon a faulty proposition: that Norwood's attempt to terminate the license complied with the terms of the license agreement. It did not.

Section 7 of the license agreement provides in pertinent part that:

LICENSOR shall have the right immediately to terminate this Agreement if LICENSEE receives notice of and fails to remedy a breach within thirty (30) days of receipt of written notice of such breach.

Kustom offers two arguments why Norwood's 2009 termination violated the

licensing agreement. First, it argues that it was never provided with notice of a specific breach by the current Norwood. Second, Kustom asserts that even if Old Norwood's attorney's letter in May 2008 was sufficiently detailed to start the thirty-day clock, the lack of any response to both Liddle's efforts to cure and, specifically, to his last email to Old Norwood's attorneys in July 2008, amounted to Norwood's acceptance of that cure. At the very least Old Norwood's silence provided a reason for Kustom to assume that Liddle's efforts had been satisfactory. In more precise legal terms, Kustom is arguing that Norwood's failure to respond to Liddle's explanation of Kustom's attempt to cure either waived Norwood's right to terminate the license on the basis of the breach alleged in 2008, or that Norwood is estopped from asserting such a right because of its silence up to November 2009.

Technically, there is a difference between estoppel and waiver. Silence or inaction is typically insufficient to constitute an intentional relinquishment of a right or waiver under Indiana law. *Tate v. Secura Ins.,* 587 N.E.2d 665, 671 (Ind. 1992). However, estoppel focuses not on intent, but on the effect of one's conduct. *O.K. Sand and Gravel, Inc. v. Martin Marietta Corp.*, 786 F. Supp. 1442, 1446 (S.D. Ind. 1992). And, in Indiana, estoppel may arise from silence or acquiescence if the party in good faith would otherwise be expected to act or respond. *Id.* at 1447; *see also Ebersol v. Mishler,* 775 N.E.2d 373, 379 (Ind. Ct. App. 2002).

In this instance, in reliance on the lack of a response to Liddle's July 2008 email or any further dialogue from Old Norwood's attorneys, Kustom took no further action towards cure of any supposed breach that had been the subject of the May 2008 letter. .

Not only was there no further mention of a breach in 2008 by Old Norwood, but Old Norwood continued to do business with Kustom following Liddle's email, further suggesting Kustom had satisfied its request for cure. There is no evidence Kustom was aware that, as a result of bankruptcy proceedings, Old Norwood's assets had been sold and another entity had assumed the rights and obligations associated with the settlement and license agreements. This fact was first conveyed to Kustom by Norwood's attorney's letter of November 3, 2009, which also claimed to terminate the license agreement. But the successor Norwood stands in the shoes of the Old Norwood, and is therefore estopped from attempting to piggyback on Old Norwood's 2008 notice, given Kustom's curative efforts and Old Norwood's ensuing silence and continued commerce with Kustom. Norwood was required to provide new notice and an opportunity to cure whatever breaches it may have alleged prior to terminating. Although the Court previously found in this entry that Kustom committed the first material breach, that breach did not discharge Norwood from its contractual obligations to Kustom. *See Frazier v. Mellowitz*, 804 N.E.2d 796, 804 (Ind. Ct. App. 2004) (holding that an uncured material breach does not discharge the non-breaching party unless the material failure to perform cannot be cured). Therefore, regardless of Kustom's breach, Norwood was still bound by the parties' contractual provisions for terminating the agreement.

The Court finds that the license agreement was not terminated in compliance with its own provisions and that the continued use of the mark by Kustom after November 3, 2009, does not establish trademark infringement as a matter of law. The license agreement remained in effect following Norwood's letter on that date, and Kustom was

entitled to continued use of the trademark in accordance with the agreement. Whether other acts by Kustom constituted infringement is not the subject of Norwood's summary judgment motion and is not an issue the Court decides with this entry. The Court simply finds that equitable estoppel prevents Norwood from successfully asserting trademark infringement on the basis of Kustom's mere use of Norwood's mark subsequent to the purported termination of the license agreement. Consequently, Norwood's motion for summary judgment on any part of Count III of its Second Amended Complaint is denied.

However, there is a distinction to be made between the effect of Norwood's failure to provide Kustom with a new notice of breach on its ability to terminate the license agreement and the effect such failure had on its right to file a lawsuit. The Court has previously noted relevant authority cited by Norwood in *Wisconsin Alumni Research Foundation v. Xenon Pharmaceuticals, Inc.,* 591 F.3d 876 (7th Cir. 2010). *Wisconsin Alumni* provides that a contractual obligation to provide notice and an opportunity to cure does not affect the obligor's right to sue for breach. *Id*. at 888. While a notice provision may give the breaching party an opportunity to cure and keep the license, unless specifically set forth in the contract it does not guarantee immunity from suit for breach while the cure is being attended to, if it is being attended to. *Id.*

Norwood also argues that *Wisconsin Alumni* provides a basis for this Court to find that it owed no additional notice to Kustom, pointing to the fourteen-month period between notice of breach and the termination notice which was issued in that case. *Id*. at 887. However, the facts of that case are clearly distinguishable, insofar as the party said to be breaching in *Wisconsin Alumni* did not claim that the notice of breach was

inadequate to put it on notice. *Id*. It was understood that the opposing party considered there to be a breach or default. *Id*. That is not the case here.

Because Norwood failed to provide Kustom with notice of breach and an opportunity to cure prior to terminating the license agreement, Kustom's defense of waiver, acquiescence, or estoppel is meritorious with regard to the continued use of the trademark following Norwood's ineffective November 2009 termination attempt. For that reason, the Court grants summary judgment in favor of Kustom that its mere use of the trademark after November 2009 was not trademark infringement. Whether the defense has merit with regard to any other potential breaches remains an issue for trial.

### D.     Breach of Contract by Norwood (Count I of Kustom's Counterclaim)

Kustom asks the Court to find that it is entitled to summary judgment on its breach of contract counterclaim, asserting that Norwood failed to:  (1) request in writing on a reasonable basis that Kustom cease or modify use of the "Licensed Mark;" (2) give Kustom notice of alleged breaches and an opportunity to cure before terminating the license; (3) cooperate with Kustom and use its best efforts to effectuate the terms of the agreements; and (4) abide by the covenant in the settlement agreement not to bring any legal action against Kustom regarding its use of "KOOZIE" except to the extent that such use constitutes a breach. As damages for these alleged breaches, Kustom asserts the "expense and disruption of this lawsuit."

Referencing section 6(c) of the license agreement, Kustom maintains that Norwood had an obligation to respond to any perceived misstep or breach on the part of Kustom by providing it with written notice thereof.   While written notice may have been

a prerequisite to terminating the license, no rational interpretation of Section 6(c) of the license agreement would find that it obligated Norwood to provide written notice of anything other than a breach of product standards. Section 6 is the section of the license agreement which deals with product standards and quality control, as noted in its title. Subsection (c) is entitled "Deficiencies" and reads in pertinent part as follows:

> For clarity and not by way of limitation, LICENSEE's failure to meet any applicable Licensor's Standard shall constitute a breach of this Agreement. If LICENSOR at any time requests in writing (with an identified reasonable basis for the request) that LICENSEE cease or modify the use of the Licensed Mark that otherwise has been approved or is permitted hereunder, LICENSEE shall phase out such use by exhausting it inventory of materials ….

This subsection places a requirement upon Kustom, should Norwood notify it of a breach of product standards, but it does not provide Kustom with a basis to recover from Norwood. Consequently, Norwood's failure to provide a written notice of this sort may provide a defense to any breach of contract claim by Norwood premised upon breach of product standards, but it is not a basis for Kustom to recover against Norwood.

Previously in this entry, the Court found that Norwood did not terminate the license in compliance with the terms of that agreement. As noted, that provides Kustom with a defense to certain infringement claims, but it does not prevent Norwood from pursuing a breach of contract claim, *see Wisconsin Alumni,* 591 F.3d at 888, nor does it allow Kustom to seek damages for the expense and inconvenience of being sued for breach. The Court also previously determined that the "best efforts" provision in the "Further Acts" clause of the settlement agreement dealt with the efforts necessary to facilitate the logistics of accomplishing the settlement of the previous litigation and did

not provide a basis to assert a contract breach for a failure to enter into discussions with regard to what may or may not have constituted a breach of the license agreement.

That leaves Kustom's claim that Norwood breached the covenant not to bring suit, which is set forth in paragraph 4 of the settlement agreement.

> … Norwood covenants and promises not to bring any legal or administrative action or proceeding of any kind against KustomKoozies … based on or arising out of or related to KustomKoozies' or Liddle's use of the term "KOOZIE," … except to the extent that such use constitutes a breach of this Agreement or the License Agreement … .

Despite asking in its motion for summary judgment on its claim that Norwood breached this part of the settlement agreement, nowhere in Kustom's supporting brief does it attempt to explain the claim or why it would be entitled to summary judgment. Indeed, Norwood is clearly claiming in this lawsuit that Kustom's use of its mark violated both agreements.

Equally confounding to the Court is how Kustom expects summary judgment to be awarded on its breach of contract claims without any effort to show damages, other than to assert the inconvenience and cost associated with this lawsuit. Unlike Norwood, which specifically limited its request for summary judgment as to the required elements of the existence of a contract and breach thereof, Kustom's motion and supporting brief set forth no such limitation to its summary judgment request and offer little to no support for any finding of damages. Consequently, Kustom is not entitled to summary judgment on the breach of contract issues it raises in its cross-motion for summary judgment and its motion is denied.

**E.** **Unfair Competition by Kustom (Count IV of Norwood's Second Amended Complaint)**

Count IV of Norwood's Second Amended Complaint asserts an unfair competition claim. Kustom argues that because Norwood operates through a chain of distributors, it is not in direct competition for the same customers as Kustom and is therefore barred from bringing an unfair competition claim under the Lanham Act based upon false advertising. *See L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.*, 9 F.3d 561 (7th Cir. 1993).

The Lanham Act provides two bases upon which a claim of unfair competition may be brought. 15 U.S.C. § 1125(a)(1). The first basis is any false representations with respect to the origin, endorsement or association of goods with another's distinctive mark, 15 U.S.C. § 1125(a)(1)(A), and the second is any false representation in advertising, 15 U.S.C. § 1125(a)(1)(B).

Kustom is correct in its assertion that district courts in the Seventh Circuit have consistently interpreted the Seventh Circuit's decision in *L.S. Heath & Son* as requiring an entity bringing a false advertising claim under the Lanham Act to be in direct competition with the alleged unfair competitor. *Thermal Design, Inc. v. Am. Soc. of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.*, 775 F. Supp. 2d 1082, 1091-92 (E.D. Wis. 2011); *Emerging Material Technologies, Inc. v. Rubicon Technology, Inc.*, 2009 WL 5064349, *3 (N.D. Ill. Dec. 14, 2009); *Platinumtel Communications, LLC v. Zefcom, LLC*, 2008 WL 5423606, *4-*7 (N.D. Ill. Dec. 30, 2008). Nevertheless, the same is not true with respect to claims rooted in false association as provided for in 15 U.S.C. § 1125(a)(1)(A). *See Gail Green Licensing & Design Ltd. v. Accord, Inc.*, 2006 WL 2873202, *2 (N.D. Ill. Oct. 5, 2006). Indeed, nearly all courts considering the issue

have determined that one need not be a direct competitor to bring a false association claim under the Lanham Act.  5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:22 (4th ed. 2011).

Norwood contends that it is not bringing its unfair competition claim based upon false advertising.  Rather, it is asserting a claim for false association.  Kustom responds by pointing to parts of Norwood's Second Amended Complaint that make reference to advertising and promotional materials.  Regardless of such references, Norwood has conceded that it has no false advertising claim, and certainly the Court will not allow one to be prosecuted at some later point.  However, on the basis of notice-pleading require-ments, the Court finds that Norwood has sufficiently alleged a claim for false association under the Lanham Act, and that claim may proceed because there remain material questions of fact which the evidence has yet to resolve.

### F.    Kustom's Affirmative Defenses

Kustom asserts numerous affirmative defenses in response to Norwood's Second Amended Complaint.  Norwood contends that most are subject to a summary ruling, based upon both arguments the Court has discussed in this entry and for other reasons as well.  However, Norwood does not identify by paragraph number which specific defenses it believes its arguments apply to.  In order that the parties have some clarity as to the defenses which remain, the Court sets forth below a list of all the "affirmative defenses" asserted by Kustom in its answer and their current status.

1.  **Failure to state a claim -** This defense was not a subject of Norwood's summary judgment motion and because it has not been the subject of a motion, the Court does not anticipate it being an issue for trial.

`  2.  **Forum *non conveniens* -** This defense is typically raised by motion at an

early stage of the litigation and, because it hasn't been, the Court does not anticipate it being an issue going forward.

3.  **Trademark's registration was granted in error -** This entry has resolved this issue (*see* Section A), insofar as Kustom is estopped from raising this defense, both contractually and equitably. Norwood is entitled to summary judgment on this defense.

4.  **No valid assignment of the mark -** This defense was not specifically identified as being a subject of either party's summary judgment motion so remains an issue for trial.

5.  **Unclean hands due to knowledge of improper registration -** Kustom asserts that Norwood knew the registration of its mark was issued in error. As discussed in this entry (*see* Section A), Kustom is contractually and equitably estopped from raising a defense based upon the mark being improperly registered. Norwood is entitled to summary judgment on this defense.

6.  **Unclean hands due to providing no notice -** As pled, Kustom's defense is centered on Norwood's failure to notify Kustom that its effort to register the mark was successful. Contrary to Kustom's contention, Paragraph 5 of the settlement agreement does not require Norwood to provide such notice. Norwood is entitled to summary judgment on this defense.

7.  **Waiver, acquiescence or estoppel based upon continuing to do business -** Kustom appropriately raises this issue with regard to Norwood's effort to base its termination of the license agreement in the fall of 2009 on Old Norwood's May 2008 letter providing notice of an alleged breach and an opportunity for cure. To that end, the Court has ruled that summary judgment in favor of Kustom shall issue with respect to the license termination being ineffective due to a lack of opportunity to cure any breach and also in favor of Kustom that its mere use of the mark following the 2009 termination attempt was not trademark infringement (*see* Section C). Whether the defense is effective with regard to other potential infringing actions or license breaches was not argued through the cross-motions for summary judgment and remains an issue for trial.

8.  **Waiver, acquiescence or estoppel based upon termination of the license without notice and opportunity to cure -** Similar to the previous defense, it is a meritorious defense with regard to Norwood's license termination being ineffective (*see* Section C). However, as discussed in this entry, this defense has no merit with regard to Norwood's breach of contract claim (*see Section B and Wisconsin Alumni Research Foundation v.*

*Xenon Pharmaceuticals, Inc.,* 591 F.3d 876 (7th Cir. 2010)). Whether the defense is provable with regard to other alleged infringement acts remains an issue for trial.

9.     **Failure to cooperate and use best efforts** - This defense was thoroughly discussed in this entry (*see* Section B). Norwood is entitled to summary judgment on this defense.

10.     **No valid assignment of claims from Old Norwood -** This defense was not specifically identified as being a subject of either party's summary judgment motion and remains an issue for trial.

11.     **Prior material breach -** As noted in this entry (*see* Section B), it is clear that Kustom's operation and/or ownership of the additional websites which used "koozie" in their domain names was the first breach and, accordingly, Norwood is entitled to summary judgment on this defense.

12.     **Trademark is generic -** This entry has resolved this issue, insofar as Kustom is estopped from raising this defense, both contractually and equitably (*see* Section A). Norwood is entitled to summary judgment on this defense.

13.     **Failure to provide notice and opportunity to cure breaches of settlement agreement.** - Kustom argues that the notice and opportunity to cure provision in the license agreement applies to the settlement agreement because the settlement agreement incorporates the license agreement. This is defense is rejected as no rational interpretation of the contracts could lead to implying such a notice requirement for breach of the settlement agreement. Norwood is entitled to summary judgment on this defense.

14.     **Implied Duty of Good Faith and Fair Dealing -** This was not a defense which was a subject of either of the party's summary judgment motions and remains at issue for trial.

15.     **The mark is not inherently distinctive** - This entry has resolved this issue, insofar as Kustom is estopped from raising this defense, both contractually and equitably (*see* Section A). Norwood is entitled to summary judgment on this defense.

16.     **Defendants sought no declaration of rights** - This defense was not identified as being a subject of either party's summary judgment motion and remains an issue for trial.

17.     **Public policy in favor of invalidating merely descriptive or generic**

**trademarks outweighs the preclusive effect of the agreements between Norwood and Kustom** - As discussed in this entry, there are public policy implications on both sides of this issue, but the public policy in favor of enforcing voluntary litigation settlements outweighs the public policy with regard to an individual entity's right to challenge an individual trademark, especially where others are willing and not precluded from challenging the trademark (*see* Section A). Norwood is entitled to summary judgment on this defense.

18. **Norwood breached the agreements and Kustom's use of Norwood's mark was consistent with authorization, while "koozie" was used only as a generic description** – To the extent the Court understands the defense being raised, the Court's determination that Kustom was the first to breach either agreement negates a defense based on a prior material breach. Further, to the extent Norwood eventually breached the license agreement by failing to provide adequate notice and an opportunity to cure prior to terminating the license agreement, such breach affects only the propriety of the license termination; it does not affect Norwood's right to sue for Kustom's breach. (*see Section B and Wisconsin Alumni Research Foundation v. Xenon Pharmaceuticals, Inc.,* 591 F.3d 876 (7th Cir. 2010)). In addition, as discussed, the "capitalization issue" holds no merit as a foundation for a defense to Norwood's claims.

19. **Norwood breached the agreements and Kustom reserves the right to assert additional Lanham Act defenses as the case proceeds** – This case has now proceeded past the summary judgment stage, and the time for filing an amended pleading has long since passed. No further defenses may be added without leave of court.

20. **Failure to require other dealers to comply with trademark (naked licensing)** - Licensee estoppel bars the assertion of a naked licensing defense based on the licensors actions during the course of the agreement. *Bunn-O-Matic Corp. v. Bunn Coffee Service, Inc.*, 88 F. Supp. 2d 914, 927 (C.D. Ill. 2000). Norwood is entitled to summary judgment on this defense.

21. **Norwood is barred from seeking lost profits** - This "defense" is mooted by the parties' stipulation. [Dkt. 100.]

22. **Norwood is judicially estopped from seeking damage other than disgorgement of profits** - This "defense" was not the subject of either party's summary judgment motion, nor was the issue addressed in any significant manner in the briefs and it remains an issue for trial.

23. **No contractual basis for an award of attorneys fees** - This "defense"

was not the subject of either party's summary judgment motion, and remains an issue for trial (though the amount of any fee award would be determined by the Court.)

## V.    *Conclusion*

For the reasons explicated in this entry, Norwood's Motion For Partial Summary Judgment, [dkt. 147], is **GRANTED IN PART** as to Counts I and II of its Second Amended Complaint.   The Court finds as a matter of law that the settlement and license agreements were valid contracts between the parties and that Kustom breached those contracts by purchasing, owning, registering or operating internet domain names that contained the term "koozie," and by using the term "koozie" or "KOOZIE" to describe and sell products on those internet sites.   Whether Norwood can prove the element of damages with respect to Counts I and II remains an issue for trial.   In addition, Norwood is entitled to summary judgment in its favor with respect to the following affirmative defenses pled by Kustom: 3, 5, 6, 9, 11, 12, 13, 15, 17, 18, and 20.   Norwood's motion is **DENIED** in all other respects.

Kustom's Cross Motion For Summary Judgment, [dkt. 162], is **GRANTED IN PART** with respect to Count III of Norwood's complaint, insofar as the Court finds that Norwood failed to provide Kustom with notice of breach and an opportunity to cure prior to terminating the license agreement and therefore the mere use of the claimed mark after the failed attempt to terminate the license agreement does not constitute trademark infringement.   On that same basis, Kustom is also entitled to partial summary judgment in its favor with respect to its affirmative defense number 8.   Kustom's motion is **DENIED** in all other respects.

-33-

There remain pending several motions addressing expert reports or expert testimony at trial. Based upon a preliminary review of those motions, it appears that they are related to the issue of the validity of Norwood's mark, which issue the Court has eliminated from this case. However, because counsel did not have the benefit of this ruling when the motions were filed, the parties are given ten (10) days in which to show cause why those motions should not be denied as moot, or to identify which part of any motion remains an issue to be decided prior to trial.

**IT IS SO ORDERED**.

12/21/2011

_Jane Magnus-Stinson_
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only**:

Tracy Nicole Betz
TAFT STETTINIUS & HOLLISTER LLP
tbetz@taftlaw.com

Oni N. Harton
BOSE MCKINNEY & EVANS, LLP
oharton@boselaw.com

J. Christopher Jackson
WOOD JACKSON PLLC
cjackson@woodjacksonlaw.com

Erin C. Nave
TAFT STETTINIUS & HOLLISTER LLP
enave@taftlaw.com

Craig Eldon Pinkus
BOSE MCKINNEY & EVANS, LLP
cpinkus@boselaw.com

Jonathan G. Polak
TAFT STETTINIUS & HOLLISTER LLP
jpolak@taftlaw.com

Gayle A. Reindl
TAFT STETTINIUS & HOLLISTER LLP
greindl@taftlaw.com